UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 12-70541 MAG (DMR) |
| Plaintiff, | ) | |
| v. | ) | DETENTION ORDER |
| MICHAEL BACA, | ) | |
| Defendant. | ) | |

## I. BACKGROUND AND INTRODUCTION

Defendant Michael Baca is charged in a criminal complaint with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) (possession of five or more grams of methamphetamine with intent to distribute) and 21 U.S.C. § 860(a) (possession of five or more grams of methamphetamine with intent to distribute within 1000 feet of an elementary school).

On May 16, 2012, Mr. Baca made his initial appearance. At that time, the United States moved for his detention pursuant to the Bail Reform Act and asked for a hearing as permitted by 18 U.S.C. § 3142(f). Pretrial Services prepared a full bail study, which recommended Mr. Baca's detention based on its belief that the court could not impose a combination of release conditions to reasonably mitigate the risk of danger to the community. The court held a detention hearing on May 21, 2012, at which defendant proffered a number of potential sureties and requested that Mr. Baca be evaluated for placement in a residential treatment center to address both substance abuse and mental health issues. The court held that in light of Mr. Baca's

DETENTION ORDER
CR 12-70541 MAG (DMR)                1

history, it would not consider such a placement without a psychological evaluation. Dr. Jeremy Coles conducted the evaluation on June 25, 2012. The court held a further detention hearing on June 27, 2012, and concluded that Mr. Baca should be detained. However, the defense requested an opportunity to provide further briefing. The court subsequently reviewed the parties' briefs. Having fully considered the matter, the court orders that Mr. Baca be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the Court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or community danger. Close cases should result in release "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, the court should deny pretrial release "only in rare circumstances." *Motamedi*, 767 F.2d 1403 at 1405 (citations omitted); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

The court must order a defendant detained if it finds that it cannot fashion conditions to assure the defendant's appearance in court or the safety of the community or another person. 18 U.S.C. § 3142(e)(1). The government bears the burden of proof on either prong. To prove that no condition or combination of conditions can assure that the accused will appear at required court hearings, the government must show by a preponderance of the evidence that the accused is a flight risk. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990) (citing *Motamedi*, 767

F.2d at 1406). The government must prove that the defendant poses a non-mitigable danger to the community through clear and convincing evidence. *Id.* (citing *Motamedi*, 767 F.2d at 1406).

For certain charged offenses, including drug crimes with a maximum prison term of at least ten years, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of the community." 18 U.S.C. § 3142(e)(3). The presumption shifts a burden of production to a defendant, but the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The presumption is not erased when a defendant proffers rebutting evidence; "rather, the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with'" the other relevant evidence. *Id.* (citation omitted).

Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f)(2). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405 (citations omitted).

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

The affidavit supporting the underlying criminal complaint alleges that on April 20, 2012, Alameda County deputy sheriffs arrested Mr. Baca during the course of an investigation

DETENTION ORDER
CR 12-70541 MAG (DMR)         3

that included a probation search of his residence, which is directly across the street from an elementary school. The search resulted in the seizure of plastic baggies later confirmed to contain approximately 24 grams of methamphetamine, Carisoprodol pills, a digital scale with suspected methamphetamine residue, an unloaded handgun magazine, and a police-style tactical vest and utility belt.

**B. The History and Characteristics of Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Mr. Baca is twenty-four years old and has lived in Hayward, California his entire life. For the past year, he has lived with his significant other and his uncle. He graduated from high school in 2005 and has had sporadic employment.

Mr. Baca identified several potential sureties, including his mother and two sisters. All three are gainfully employed and have no criminal history. All are in frequent contact with Mr. Baca and expressed their support for his release.

Mr. Baca has two misdemeanor convictions: one for driving without a license, and the other for being a minor possessing alcohol. In 2008, his probation was revoked in lieu of filing a charge for possession and sale of marijuana. In 2011, Mr. Baca sustained a felony conviction for sale of a controlled substance. He has numerous arrests that did not result in filed charges, including arrests for drug and gun possession, and for domestic violence. He is a daily methamphetamine user and also regularly uses marijuana.

Mr. Baca has a history of severe mental health issues, for which he has been prescribed psychotropic medications. In June 2011, he attempted to commit suicide with a shotgun wound to his face. He attempted suicide a second time in October 2011 by slitting his wrists and was held for two weeks in a psychiatric unit. He reported that he has been hearing voices daily for the past eighteen months and that the voices tell him to hurt himself and others.

At the court's request, Dr. Coles performed a psychological evaluation of Mr. Baca. Dr. Coles noted that Mr. Baca was cooperative in all respects and expressed some awareness of his problems, as well as his desire to attend a drug treatment program to receive assistance in getting his life on a positive track. Dr. Coles opined that Mr. Baca is likely afflicted with a major mental illness beyond a drug-induced psychosis. In Dr. Coles' opinion, Mr. Baca's risk for harming

himself or others could be sufficiently managed in a residential program, only if the program (1) could address both psychiatric and chemical dependency needs; and (2) did not involve a very confrontational program, as Mr. Baca would likely not be able to tolerate such an approach, which could result in detriment to his psychological functioning. Dr. Coles advised that without the containment of such a program, Mr. Baca would be very susceptible to returning to the community, becoming frustrated, and resuming behaviors that presented risks to the community and himself.

Viewing the record as a whole, the court finds that the government has met its burden of establishing by clear and convincing evidence that Mr. Baca presents a risk of danger to the community that the court cannot mitigate through the imposition of reasonable conditions. Of greatest concern is Mr. Baca's history of severe mental illness, self-harm, and substance abuse. In light of the specific needs identified by Dr. Coles, the court is unable to identify a suitable residential treatment program for Mr. Baca. Moreover, such a placement would be temporary at best and, therefore, would not adequately mitigate the danger to the community, as Dr. Coles opined that without the structure of a residential dual diagnosis program, Mr. Baca would likely engage in high risk behavior.

The court therefore detains Mr. Baca. He shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: July 16, 2012

DONNA M. RYU
United States Magistrate Judge